UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| R.J.E.R, <br><br> Petitioner, <br> v. <br> LAURA HERMOSILLO, et al., <br><br> Respondent. | Case No. 2:26-cv-00296-TLF <br><br> ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner, R.J.E.R., through counsel, has filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2241. Dkt. 1. Petitioner is currently detained at the Northwest ICE Processing Center (NWIPC). *Id.*

Petitioner asserts that he is a citizen of Venezuela and on July 16, 2025, an immigration judge denied his request for asylum, ordered him removed to Venezuela, but granted his petition for withholding of removal under Article III of the U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"); the IJ determined it was more likely than not that he would be tortured if removed to the proposed country of removal. *Id.* Petitioner represents that the withholding order means that petitioner can still be deported to another country that agrees to accept him, but only if he will not be tortured in that country. *Id.*

Petitioner asserts that on January 20, 2026, he was served a Notice of Removal to Mexico with nothing else listed on the notice or other documents. *Id.*

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 1

Petitioner argues that his continued detention violates Due Process because he has been granted withholding of removal to Venezuela and thus cannot be removed there. *Id.* He argues that, therefore there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

Petitioner further argues that in order to remove an individual to a third-country, the Government[1] must provide Due Process – including a notice of the third-country removal and an opportunity to respond, and that the individual must be asked whether they fear persecution or harm upon removal to the designated third-country; their response must be memorialized in writing. *Id.* If the noncitizen claims fear, measures must be taken to ensure that the noncitizen can seek asylum, withholding, and relief, under CAT before an immigration judge in reopened removal proceedings. *Id.* Petitioner asserts that the Notice of Removal to Mexico he received on January 20, 2026, did not comply with these requirements. *Id.*

Petitioner further argues that since January 2025, the Government has developed and implemented a policy and practice of removing individuals to third countries, without first following the procedures in the Immigration and Nationality Act ("INA") for designation and removal to a third country and without providing fair notice and an opportunity to contest the removal in immigration court. *Id.* Petitioner argues that punishment and deterrence appear to be the point of the Administration's third-country removal scheme, and that the Administration has, with a purpose to frighten people, hand-selected countries known for human rights abuses and instability for these third-country deportation agreements. *Id.* Petitioner argues that deportation of individuals to

---

[1] Hereinafter the Court will refer to respondents collectively as "the Government."

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 2

1  third countries to be imprisoned or harmed is unquestionably punishment and violates
2  the U.S. Constitution. *Id.*
3     As relief, petitioner seeks (a) release; (b) an order preventing re-detention unless
4  the Government establishes by clear and convincing evidence at a hearing before a
5  neutral decisionmaker that petitioner is a flight risk or a danger to the community, based
6  on changed circumstances after their most recent release by ICE; (c) an order
7  preventing removal to a third country without notice and meaningful opportunity to
8  respond in compliance with the statute and due process in reopened removal
9  proceedings; and (d) an order barring removal to any third country pursuant to the
10 Government's punitive removal policy. *Id.*

## BACKGROUND

12    Petitioner is a native and citizen of Venezuela who entered the United States on
13 October 25, 2022, without inspection and admission, and was apprehended by Border
14 Patrol near El Paso, Texas. Dkt. 7 (Declaration of Jennifer Wong ("Wong Decl.")) at Ex.
15 1 (Form I-213). On October 26, 2022, petitioner was placed in Expedited Removal
16 Proceedings as he was charged under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* at Ex. 2 (Notice
17 and Order of Expedited Removal).
18    On October 27, 2022, petitioner was released on humanitarian parole under INA
19 212(d)(5)(A); 8 U.S.C. 1182(d)(5)(A). Dkt. 8 (Declaration of Delano Dumo ("Dumo
20 Decl.") at ¶ 4. From 2023 to 2024, the Government asserts that petitioner was arrested
21 on multiple occasions on various charges. *Id.* ¶ 5.
22    On November 7, 2024, petitioner reported to Enforcement and Removal
23 Operations ("ERO") Seattle Field Office where he was notified by ERO that ICE had

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 3

1  conducted a custody re-determination and then issued petitioner Form I-200 (Warrant of
2  Arrest of Alien) and Form I-286 (Notice of Custody Determination). *Id.* ¶ 6. Petitioner
3  was taken into custody the same day and transported to the Northwest Immigration
4  Processing Center ("NWIPC") in Tacoma, Washington. *Id.* Petitioner was referred for an
5  interview with United States Citizenship and Immigration Services ("USCIS") to
6  determine if he had a reasonable fear of return and whether his case would be referred
7  to the Executive Office for Immigration Review ("EOIR") for withholding only
8  proceedings. *See id.* ¶ 7.
9        On December 26, 2024, the USCIS asylum officer conducted a credible fear
10 interview. *Id.* After the interview, the asylum officer found the petitioner to be credible
11 and that the petitioner did establish reasonability possibility of torture. *Id.* The
12 Government asserts that the asylum officer also "determined on reasonable grounds
13 that the petitioner was found to be subject to bar(s) to asylum or withholding of removal
14 and lacked nexus to any protected grounds." *Id.*
15       On January 28, 2025, the petitioner was issued a Notice to Appear ("NTA") and
16 placed in removal proceeding. *Id.* ¶ 8. Petitioner was charged under INA §
17 212(a)(7)(A)(i)(I); 8 U.S.C. § 1182(a)(7)(A)(i)(I), for being an immigrant who at the time
18 of application for admission was not in possession of a valid immigrant visa, reentry
19 permit, border crossing card, or other valid entry document, and under INA
20 212(a)(6)(A(i); 8 U.S.C. § 1182(a)(6)(A)(i) for being an alien present in the United States
21 without being admitted or paroled. *Id.* At the master hearing on February 14, 2025, the
22 petitioner admitted the allegations and the charges in the NTA, the Immigration Judge
23
24
25

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 4

1  ("IJ") sustained the charges of removability, and Venezuela was designated as the
2  country of removal. *Id.*
3       On April 10, 2025, petitioner applied (I-589) for asylum, withholding of removal,
4  and relief, under the CAT. *Id.* ¶ 9. On July 16, 2025, petitioner was ordered removed
5  from the United States to Venezuela but was granted CAT withholding of removal after
6  USCIS concluded that petitioner had a reasonable fear of return to Venezuela and that
7  his case should be referred to EOIR for review by an IJ. Dkt. 7 (Wong Decl.) at Ex. 3
8  (Order of Removal). Petitioner waived appeal for the IJ's order making it final. *Id.*
9       On October 18, 2025, third country removal documents were prepared for the
10 petitioner. Dkt. 8, (Dumo Decl.) ¶ 10. During an ICE visit on November 06, 2025, the
11 petitioner showed interest to go to Costa Rica or Canada for removal. *Id.* On January
12 20, 2026, the petitioner was given Notice of Removal to Mexico; petitioner refused to
13 sign. *Id.* ¶ 11. As of January 20, 2026, petitioner's file is in process of being forwarded
14 to USCIS for third country referral review for Mexico. *Id.* ¶ 12.

15                                        **DISCUSSION**

16 **A.    Indefinite Detention**

17      Petitioner argues he is indefinitely detained within the meaning of *Zadvydas v.*
18 *Davis*, and he is entitled to release. 533 U.S. 678 (2001).
19      The parties agree petitioner is detained under 8 U.S.C. § 1231, which governs
20 the detention and release of noncitizens who have been ordered removed (as opposed
21 to noncitizens apprehended at the border under § 1225, or those not yet ordered
22 removed, § 1226). Section 1231(a) provides that the Department of Homeland Security
23 ("DHS") is required to detain a noncitizen during a 90-day "removal period." 8 U.S.C. §
24
25

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 5

1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, or to release them on supervision. 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

Under the relevant regulations, once it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, noncitizens may be released on an Order of Supervision. 8 C.F.R. § 241.13(h). This can be revoked on account of changed circumstances where there is a significant likelihood of the noncitizen's removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2).

Here, petitioner asserts, and the Government does not dispute, that he has been held in detention, for purposes of the *Zadvydas* analysis, for over six months. The record reflects that petitioner was detained in November 2024 and a final order of removal issued on July 16, 2025. Petitioner asserts, and the Government does not

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 6

1  dispute, that they cannot deport petitioner to Venezuela as he has been granted
2  withholding of removal under the CAT.
3      Furthermore, petitioner indicates that aside from receiving a notice of intent to
4  remove him to Mexico on January 20, 2026, there is no indication the Government has
5  made any progress toward removing him to Mexico. There is also no indication
6  petitioner has any ties to countries other than Venezuela. "Courts routinely find that
7  noncitizens under such circumstances have met their initial burden under *Zadvydas*."
8  *Rea-Hernandez v. Bondi*, No. 2:25-CV-02609-TL, 2026 WL 322874, at *5 (W.D. Wash.
9  Feb. 6, 2026) (collecting cases). The petitioner has met his initial burden of showing
10 good reason to believe that there is no significant likelihood of removal in the
11 reasonably foreseeable future.
12     The Government, in response to the petition, presents the declaration of
13 Deportation Officer Delano Dumo who states that "petitioner's file is in process of being
14 forwarded to USCIS for third country referral review for Mexico." Dkt. 8 (Dumo Decl.) at
15 4. The Government acknowledges they do not have a specific date of anticipated
16 removal but argues that this does not render petitioner's detention indefinite. Dkt. 6 at 6.
17 "Courts in this circuit have regularly refused to find Respondents' burden met where
18 Respondents have offered little more than generalizations regarding the likelihood that
19 removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025);
20 *Coke v. Bondi*, No. C26-71-MLP, 2026 WL 221514, at *3 (W.D. Wash. Jan. 28, 2026).
21     Petitioner, in reply, also submits citations to several cases finding that petitioner's
22 third-country removal to Mexico was not reasonably foreseeable where there was
23 evidence presented that Mexico was only willing to accept individuals for third-country
24
25
ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 7

removal if the individuals themselves are willing to go. Dkt. 9 at 6 (citing *Rea-Hernandez*, 2026 WL 322874, at *5 (noting that petitioner presented evidence Mexico is only willing to accept individuals for third country removal if they are willing); *Coke*, 2026 WL 221514, at *2 (same)). Petitioner also submits the declarations submitted in support of some of those cases, including a declaration dated January 12, 2026, from a Federal Defender in San Diego -- indicating that individuals have told her about their experiences of being directed to walk towards Mexico, but if unwillingness has been expressed, they have been taken back to the detention center. Dkt. 9-6. The declaration also states that in at least two cases, ICE deportation officers had filed declarations confirming the Mexican government will only accept an individual if they are willing. *Id.*

Under the circumstances, the Government's conclusory assertion that petitioner's file is being forwarded to the USCIS for third country referral review to Mexico, without any specific facts indicating when or if petitioner's removal is likely to occur, fails to rebut petitioner's showing that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Petitioner also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event ICE re-detains him. Specifically, he requests an order preventing the Government from re-detaining petitioner unless the Government establishes by clear and convincing evidence at a hearing before a neutral decisionmaker that petitioner is a flight risk or a danger to the community, based on changed circumstances after their most recent release by ICE. Because petitioner's claims invoke the Court's habeas and federal question jurisdiction, the Court may provide equitable relief on those claims if petitioner meets the standard for a permanent

injunction. *See Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020).

The Court adopts the analysis on this issue recently set forth by the Court in *THAN DINH LE, Petitioner(s), v. PAMELA BONDI, et al., Respondent(s). Additional Party Names: Dep't of Homeland Sec., Immigr. & Customs Enf't,* No. C25-2454-KKE, 2026 WL 309239, at *6 (W.D. Wash. Feb. 5, 2026):

> Given Respondents' well-documented and widespread failures to comply with 8 C.F.R. § 241.13(i)(3) (in this case and countless others throughout the country[2]), [Petitioner's] concerns regarding re-detention without process are not speculative… However, notwithstanding [Petitioner's] well-founded fear of future regulatory violations, the Court cannot determine on this record whether due process would require a pre-detention hearing before an IJ in a hypothetical re-detention regardless of the circumstances. Constitutional due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" but, rather, "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citations omitted).
>
> The Government does not dispute that 8 C.F.R. § 241.13(i) would govern any future revocation of [Petitioner's] release. Accordingly, at this juncture, the Court finds it sufficient to order that, if Respondents revoke [Petitioner's] OSUP and re-detain him in the future, they must fully comply with the procedure set forth in 8 C.F.R. § 241.13(i), including a meaningful opportunity for [Petitioner] to know and contest the basis for the revocation. In declining [Petitioner's] request to determine, at this time, whether a pre-detention hearing before an IJ is necessarily required in all

---

[2] [FN 2 by *Le* Court] *See, e.g., Lecky v. Bondi*, No. 2:25-CV-02637-TLF, 2026 WL 266066, at *5 (W.D. Wash. Feb. 2, 2026) (Government failed to provide evidence of an informal interview, revocation custody review, or evaluation of contested facts); *Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *10 (S.D. Tex. Jan. 28, 2026) (Government failed to show petitioner received notice of OSUP revocation or any internal procedures to evaluate his changed circumstances justifying re-detention); *Hagos v. Noem*, No. 3:26-CV-150-JES-DEB, 2026 WL 202873, at *3–6 (S.D. Cal. Jan. 27, 2026) (Government failed to provide an opportunity to submit evidence contesting OSUP revocation and failed to show a basis for ICE's determination of changed circumstances); *Tran v. Bondi*, No. 2:25- CV-02335-DGE-TLF, 2025 WL 3725677, at *5–7 (W.D. Wash. Dec. 24, 2025) (Government re-detained petitioner without a basis to conclude that changed circumstances supported a reasonably foreseeable removal); *Rodriguez v. Bondi*, No. C25-2167RSM, 2025 WL 3466925, at *2-3 (W.D. Wash. Dec. 3, 2025) (Government could not "confirm whether Petitioner received an informal interview pursuant to 8 C.F.R. § 241.13(i)(3)").

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 9

cases, the Court is not foreclosing [Petitioner's] ability to challenge—on procedural due process or other grounds—any revocation of his OSUP in the future, at which time the Court would have the benefit of a record of the particular circumstances at issue.

### B. Third Country Removal

#### 1. D.V.D. Class Membership

The Government argues that the Court should deny petitioner's requests for relief relating to his third country removal claims because he is a member of the certified class in *D.V.D. v. U.S. Dep't of Homeland Security*, Case No. C25-10676 (D. Mass.), and is therefore bound by the Supreme Court's stay of the preliminary injunction entered in that case. Dkt. 6 at 7-10. The Government also argues the Court should exercise its discretion to dismiss petitioner's claims that seek the same relief as the class action claims. *Id.*

Courts in this district have consistently rejected the arguments raised by the Government. *See Nguyen*, 796 F. Supp. 3d at 729-32; *Coke*, 2026 WL 221514, at *3. The Court adopts the *Nguyen* court's analysis of this issue and its findings that "[t]he class certification order in *D.V.D.* does not prevent this Court from adjudicating Petitioner's claims regarding third-country removal," and that without "clear guidance from the Supreme Court," which the emergency docket order staying the preliminary injunction in *D.V.D.* did not provide, "the Court must follow well-established [Ninth Circuit] precedent." *Nguyen*, 796 F. Supp. 3d at 729-32.

On February 25, 2026, the United States District Court for the District of Massachusetts in *D.V.D.* issued the following decision[3]:

---

[3] Petitioner filed a notice of supplemental authority alerting the Court to this decision. Dkt. 13.

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 10

> [T]he April 18, 2025 preliminary injunction, Dkt. 64, is DISSOLVED. Defendants' motion to dismiss is GRANTED in part. Counts II and III are DISMISSED. Counts V and VI, including all claims against Defendant Antone Moniz, are DISMISSED without prejudice. Plaintiffs' motion for summary judgment against the remaining Defendants is GRANTED as to Counts I and IV. Judgment will enter for Plaintiffs as follows:
>
>  1. The Court DECLARES that 8 C.F.R. § 1240.12(d) requires Defendants, before effecting removal of a class member to any third country, to first seek removal to that class member's designated country of removal or specified alternative country or countries of removal, as provided in that class member's final order of removal.
>
>  2. The Court DECLARES that 8 U.S.C. § 1231(b) requires Defendants, before effecting removal of a class member pursuant to 8 U.S.C. § 1231(b)(2)(E), to first seek removal to that class member's designated country of removal or country or countries of citizenship, if any.
>
>  3. The Court DECLARES that class members have the right to meaningful notice before removal to any third country.
>
>  4. The Court DECLARES that class members have the right to a meaningful opportunity to raise a country-specific claim against removal before removal to any third country.
>
>  5. The Court DECLARES that Defendants' third-country removal policy, as embodied in DHS's March 30, 2025 memorandum, titled "Guidance Regarding Third Country Removals," and ICE's July 9, 2025 memorandum, titled "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*, No. 24A1153 (U.S. June 23, 2025)," is unlawful and SETS ASIDE that policy.
>
>  6. This JUDGMENT is STAYED until fifteen days from date of issuance or until the First Circuit rules on any motion for an administrative stay or stay pending appeal, whichever occurs first.

*D.V.D. v. U.S. Dep't of Homeland Sec.,* No. CV 25-10676-BEM, 2026 WL 521557, at *44 (D. Mass. Feb. 25, 2026).

Accordingly, the Court declines to exercise its discretion to dismiss petitioner's claims based on the Supreme Court stay and ongoing proceedings in *D.V.*D. *See Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) (rejecting defendants' "argument that a

discrete, individual claim for injunctive relief may be delayed because a pending class action seeks systemic reform relating to the same general subject matter.").

2. Due Process

Petitioner further argues that due process requires that the Government provide notice of the third-country removal and an opportunity to respond, the Government must ask whether he fears persecution or harm upon removal to the designated third-country, and his response must be memorialized in writing. Dkt. 1 at 11, 18. He argues measures must be taken to ensure that if he makes a claim of fear, he can seek asylum, withholding, and relief under CAT before an immigration judge in reopened removal proceedings. *Id.*

Petitioner argues that ICE's current third-country removal policy violates due process and relevant statutes and regulations because it "directs ICE agents to remove individuals to third countries without any notice or process at all where diplomatic assurances are received and, where no diplomatic assurances are received, to provide flagrantly insufficient notice (6-24 hours) and opportunity to respond[.]" *Id.* at 18.

The Government argues that DHS policy already provides for notice and an opportunity to be heard, and that petitioner has been provided, or will be provided, that process in this case. Dkt. 6 at 10-11.

Petitioner produces a copy of the July 9, 2025, memorandum he challenges, which provides, in relevant part:

> Effective immediately, when seeking to remove an [noncitizen] with a final order of removal—other than an expedited removal order under Section 235(b) of the Immigration and National Act (INA)—to an alternative country as identified in section 241(b)(1)(C) of the INA, ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, Guidance Regarding Third

Country Removals, as detailed below. A 'third country' or 'alternative country' refers to a country other than that specifically referenced in the order of removal.

If the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. HSI and ERO will be made aware of any such assurances. In all other cases, ICE must comply with the following procedures:

- An ERO officer will serve on the alien the attached Notice of Removal. The notice includes the intended country of removal and will be read to the alien in a language he or she understands.
- ERO will not affirmatively ask whether the alien is afraid of being removed to the country of removal.
- ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal
    - Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.
- If the alien does not affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.
- If the alien does affirmatively state a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to the U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protections under section 241(b)(3) of the INA and the Convention Against Torture (CAT). USCIS will generally screen the alien within 24 hours of referral.
    - USCIS will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal. If USCIS determines that the alien has not met this standard, the alien will be removed.

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 13

- If USCIS determines that the alien has met this standard and the alien was not previously in proceedings before the immigration court, USCIS will refer the matter to the immigration court for further proceedings. In cases where the alien was previously in proceedings before the immigration court, USCIS will notify the referring immigration officer of its finding, and the immigration officer will inform ICE. In such cases, ERO will alert their local Office of the Principal Legal Advisor (OPLA) Field Location to file a motion to reopen with the immigration court or the Board of Immigration Appeals, as appropriate, for further proceedings for the sole purpose of determining eligibility for protection under section 241(b)(3) of the INA and CAT for the country of removal. Alternatively, ICE may choose to designate another country for removal.

Dkt. 9-8.

The Court in *Rea-Hernandez*, recently summarized the relevant legal framework governing removal to a third-country as follows:

> *Only* if it is "impracticable, inadvisable, or impossible" to remove a noncitizen to (a) the country the noncitizen has designated for removal; (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from which the individual was admitted to the United States, or which contains the port from which they disembarked for the United States or a contiguous territory; or (d) the non-citizen's country of birth (or the country that now contains their birthplace) or immediate previous residence may the government remove the noncitizen to "another country whose government will accept [them] into that country." *Id.* at 15–16 (citing 8 U.S.C. § 1231(b)(2)(E)). Even then, the government may not remove any person to a country where they will be persecuted or tortured. *Id.* at 16 (citing 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16, 1208.16). Where third-country removal is anticipated due process requires *inter alia*, notice of the country to which the noncitizen will be removed that is not be provided "last minute," but with sufficient time that the noncitizen have a meaningful opportunity to apply for fear-based protection from removal. *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999). Courts in this District have found, and this Court agrees, that such notice must consist of "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)," and that the noncitizen must be affirmatively asked whether they fear persecution or harm

upon removal to the third country, with their response memorialized in writing. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019).

If a noncitizen claims fear of removal to a designated third country, courts in this District have repeatedly held that ICE must give the petitioner an opportunity "to pursue [a] claim for withholding of deportation in reopened removal proceedings before an immigration judge." *Abubaka*, 2025 WL 3204369, at *6; see *Arenado-Borges*, 2025 WL 3687518, at *6 (collecting cases).... The Court finds the reasoning in *Aden* and the other cases cited above persuasive and concludes that constitutionally and statutorily compliant notice requires that, before Petitioner may be removed to a third country, he must be given an opportunity to respond, and—if he has a fear of persecution or torture—reopened removal proceedings before an Immigration Judge.

*Rea-Hernandez*, 2026 WL 322874, at *8.

The Court in *Aden v. Nielsen* also made clear that in the context of a third-country removal, "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings]...is not an adequate substitute for the process that is due in these circumstances." 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019) (citations omitted). Rather, the removal proceedings must be reopened so that a hearing may be held. *Id.* at 1011. In *Nguyen*, the court found that "[t]he requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country[,]" and further concluded that ICE's current policy governing third-country removals "contravenes Ninth Circuit law." 796 F. Supp. 3d at 727-28.

And the Court in *D.V.D.* recently granted partial summary judgment to plaintiffs declaring DHS and ICE's third country removal policy unlawful and setting aside the policy – the judgment is currently stayed. 2026 WL 521557, at *44.

The Court adopts the analysis of these opinions; the Court concludes that petitioner is entitled to the requested relief prohibiting the Government from removing him to a third country without notice and a meaningful opportunity to be heard in

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 15

compliance with the statute and due process in reopened removal proceedings before an immigration judge.

If the Government maintains that the January 20, 2026, Notice of Removal to Mexico, was sufficient on its own to satisfy due process, the Court disagrees and holds the January 20, 2026, notice did not meet the requirements of due process. The notice appears to have no additional content, other than identifying Mexico as the intended place of removal, on the notice or other documents. There is no evidence presented that petitioner was asked whether he fears persecution or harm upon removal to Mexico, nor is his response memorialized in writing. There is no evidence petitioner was provided with any more information, and the notice fails to satisfy the requirements of due process.

      3.  Punitive Nature of Removal Policy

Petitioner requests further relief – arguing that the Court should categorically prohibit his removal to any third country on the ground that the Government's third-country removal program is unconstitutionally punitive in all applications. Dkt. 1.

Petitioner also proffers more information -- for the first time in his reply -- a printout from a website titled www.thirdcountrydeportationwatch.org, which indicates it is a project of Refugees International and Human Rights First. Dkt. 9 at Exs. A, B, C. He also refers to documentation by the organizations Freedom House and Human Rights Watch (that does not appear to be attached to the reply); an article from the New York Times titled the *U.S. Deports Nine Migrants in Secret, Ignoring Legal Protections*, The New York Times (Feb. 14, 2026) at https://www.nytimes.com/2026/02/14/world/africa/us-secret-deportation-cameroon.html.;

a New Yorker Article titled *Disappeared to a Foreign Prison, Annuals of Immigration*, New Yorker (Nov. 24 2025); a letter from the ACLU; and declarations petitioner indicates were submitted in the *D.V.D.* case that are dated in November and early December 2025. *Id.*

None of the declarations concern the circumstance that petitioner indicates he may be subject to – removal to Mexico followed by removal by Mexican officials to Venezuela, or detention, forced repatriation or retaliatory violence by Venezuelan officials upon Venezuelan nationals removed from the United States to Mexico. Because these documents were submitted in reply, the Government did not have the opportunity to respond to these submissions. For these reasons, the Court declines to consider the proffered argument and information in reply.

On the present record, the Court declines to make a broad ruling prohibiting petitioner's removal to any third country on the ground that the Government's third-country removal program is unconstitutionally punitive in all applications.[4] The relief granted in this order requiring notice and a meaningful opportunity to be heard will allow petitioner to challenge any proposed third-country removal where he can show a risk of imprisonment or other serious harm, and nothing in this order prevents him from pursuing additional relief. *See Coke*, 2026 WL 221514, at *3; *Rea-Hernandez,* 2026 WL 322874, at *5.

## CONCLUSION

The Court **GRANTS** the federal habeas petition in part.

---

[4] Although the articles and declarations raise important issues they would not, in this case, support the broad ruling requested by petitioner.

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 17

1. The Government is **ORDERED** to release petitioner from custody within 24 hours of the filing of this order, on appropriate conditions of supervision.

2. It is further **ORDERED** that if the Government takes steps to remove petitioner to Mexico or another country, it must provide him with written notice of its intent to do so and a meaningful opportunity to respond in compliance with the statute and due process, in reopened removal proceedings before an immigration judge. On July 16, 2025, petitioner was ordered removed from the United States to Venezuela but was granted CAT withholding of removal after USCIS concluded that petitioner had a reasonable fear of return to Venezuela and that his case should be referred to EOIR for review by an IJ. Dkt. 7 (Wong Decl.) at Ex. 3 (Order of Removal). Petitioner waived appeal for the IJ's order making it final. *Id.*

3. Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is **DENIED** without prejudice.

4. No later than two days after petitioner's release (for example, if petitioner is released on a Monday, then the Government shall file the declaration no later than Wednesday; or, if petitioner is released on a Friday, then the declaration shall be filed no later than the following Monday) the Government must file with the Court a declaration confirming the date and time petitioner has been released from custody.

//

ORDER GRANTING IN PART PETITION FOR WRIT OF
HABEAS CORPUS - 18

5. The Court will entertain any appropriate post-judgment request for attorneys' fees.

Dated this 6th day of March, 2026.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 19